Now we'll hear Baldev Singh Gill v. Gonzales. Good morning. May it please the court, my name is Camille Becker. I'm appearing on behalf of a petitioner, Baldev Singh Gill. The sole issue before the court today is whether the judge's adverse credibility finding is clearly erroneous. Petitioner submits that each of the four bases upon which the IJ bases adverse credibility finding are clearly erroneous and must be overturned. The crux of the case, the crux of the adverse credibility determination comes down to an issue the IJ cited regarding a perceived discrepancy between two affidavits. Namely, there was an affidavit submitted or written by petitioner's uncle which stated that the uncle's sons, or the petitioner's cousins, were members of the Sharamani Akali Dalman party. This is consistent with everything petitioner has ever stated in the record. The IJ, however, took issue with the fact that there was a second affidavit written by petitioner's father, who was the nephew of the father, the cousin again of the petitioner, saying that they were the members of the all-Indian Sikh student federation. The IJ perceived this inconsistency. Am I correct in recalling, I may have just forgotten my Indian politics, but I thought AISSF and Akali Dalman had roughly the same goals, Khalistan, independence or autonomy at least for Sikhs, and that the differences were more personal differences about who was going to be the leader of what? That's absolutely correct, Your Honor. In fact, at page 299 of the administrative record, we can see from the background country conditions that in 1944, the all-Indian Sikh student federation was established as the youth and student wing of the Akali Dal party. So they actually originated from the same party. And even today, it's totally possible for a member to be a member of the federation and the Akali Dal party. In fact, it's common for you to start off as a college student, as a member of the federation, and then become a member of the Akali Dalman party. The parties are both Sikh nationalist parties. They both peacefully advocate for the creation of Khalistan. And they continue to work together and support the same candidates almost always in elections, in local and national elections. Their objectives are almost identical, and it's common that they would be members of both parties. And in fact, Petitioner actually gave this... They're still members of both parties? I thought they had diverged. They are different parties today. The Akali Dal party and the Trotskyites, to where they hate each other. I don't think it's analogous to the Trotskyites and the Stalinist party, because they actually do support each other's objectives today. They are separate parties today. They originated from the same party. They're separate parties, but they're members. It is possible to be members of both parties, and it is common. So are you saying back at the time it was relevant, it was even more likely that you're a member of both parties? It is, yes. Today, as well as in the 90s, it's completely possible, and it's supported by background documents. And this was actually explained by the Petitioner at page 153. Well, first of all, I'd like to point out that the judge misstated the record when he said that the Petitioner actually was confronted and asked about the explanation. This is at 53 of the administrative record in the judge's decision. He said the Petitioner was confronted about this explanation, and he remained silent. This is not a fair review of the record. The Petitioner was confronted once by the judge, and when he was confronted by the judge, he gave an explanation. That's at page 142 of the administrative record. And I'll quote from the record. He says, when the judge asked him directly about the issue, he says, I don't know. Maybe there was some typing mistake or something, but whatever I've submitted and was sent to me, I submitted here. But importantly, the Petitioner didn't speak, read, or understand English, and the letters were written in English. So he didn't actually understand the contents of the affidavit or review them before he was presented with the affidavits and the contents therein in court. But more important than this is at 153 of the administrative record, where he explains he's questioned by his attorney, and he starts to explain that one could be a member of both parties, and his attorney is asking him, well, how plausible is it that they are members of both parties? And before he can answer this question, the judge diverts his attention away from this testimony and asks him about a completely unrelated issue and doesn't allow him to fully explain this portion of his testimony. And this is significant because we know under Ninth Circuit case law, under Korr v. Ashcroft and Chen v. Ashcroft, both 2004 cases, that an I.J. is required to give a Petitioner an opportunity to explain any perceived discrepancy. Here, he didn't give him an opportunity to explain, and he misstated the record by saying that he remained silent. The Petitioner did not remain silent. He gave two cogent, plausible explanations. The I.J. ignored them and then precluded him from fully explaining on the second issue, which is whether or not they might be members of both parties. And we know under Chen v. Ashcroft, the Ninth Circuit outlined the policy behind this requirement. So this is where the counsel is asking him about can you be a member of both parties, and then the judge says, how old is your father? Yes. He totally interrupts him and diverts him off to another issue. So he precludes him from giving a reasonable opportunity to explain the perceived discrepancy. And the reason this is important, Your Honors, is that Chen said, the court in Chen said that it does not want the Ninth Circuit to be left with having to speculate as to whether there's some rational explanation for the discrepancies the I.J. thinks he sees. That's exactly the situation the I.J. has put this panel in today. You're required with having to speculate as to whether these discrepancies have been explained because the I.J. misstated the record by saying he didn't he just remained silent and didn't explain anything. Well, that's not a fair review of the record. The record shows us that we have two explanations, and the I.J. didn't give him a full opportunity to explain those discrepancies. But even if this Court today decides not to overturn on that basis, this issue is minor. And again, the I.J. misstated the record. He misstated the facts. The I.J. the issue here with the court is that the I.J. misstated the record. Is it my understanding that he was arrested for the Cousin's Party, not his own, is that correct? That's correct, Your Honor. But the reason we know that he was arrested on three occasions. Cousin's would be very major if it was his own party. Absolutely. In the U.S., the way our families are spread out, it would tend to be minor if it was Cousin's Party because Americans tend not to be as close to Cousins as people in a lot of third world countries. India, North India, I don't really know. I would think Cousin's would be somewhere in the middle in terms of how well you'd know him. And he actually, well, he wasn't that familiar. I don't know what parties my cousins are in. I have a pretty good guess they're Democrats, but I don't really, I never asked them. But what's important here again is that he misstated the record when he found at page 49 of the record that there was this letter upon his third arrest, right? So on his third arrest, his cousins had visited him just a few hours before his third arrest, and so the police came looking for the cousins. But when they came to the house, they found a letter. And the I.J. misstated the record when he said this letter came from the cousins at page 49. If this letter would have come from the cousin, there could be a strong argument that maybe, or there could be an argument that it did go to the heart of his claim of persecution, but this letter didn't come from the cousins. It was given to him two years prior to this. So the I.J., again, there's more discrepancies between the I.J.'s decision and the record than Petitioner's testimony and the record. Roberts. See, the letter that the I.J. is talking about on the next to the last line, it wasn't who was it from? It was from two individuals who arrived two years prior to the arrest, and it was intended to be given to Gurmeet Singh, who is a fellow Federation member. And Gurmeet Singh was accused of being involved in an assassination attempt against a high-level politician, and this is the reason he was persecuted during all three arrests. It had really nothing to do with the cousins. In fact, when he was asked directly on page 90 of the administrative record, 90 and 91, Petitioner said he does not know why the police were looking for his cousins. So this Court, and the I.J. essentially misstated the record to presume that this letter was associated with the cousins, which it wasn't. You're saying the discrepancy here wasn't by the Petitioner. It was by the I.J. That's exactly right. Yes. And so this letter was the reason he was arrested on the third time. But Petitioner doesn't know why the police were looking for his cousins. So the fact that we don't know why they were looking for the cousins leads us to speculate that this might go to the motive of the police, but we don't know why they were looking for it. It may or may not have been involved in some way with their political affiliation. We don't know from the record. So I'll reserve the rest for rebuttal, if I could, please. Thank you, counsel. May it please the Court. Mark Rago, on behalf of the Acting Attorney General. I have a couple of questions for you on this. Yes, sir. I don't know how to read these things except in terms of experience combined with knowledge of a particular culture from country reports and other permissible sources. And I'm thinking, I wasn't joking, I don't know what my cousins' politics are. I have pretty strong suspicion based on what our family generally does, but that's about it. And as far as whether photos were taken in Washington or California, I can't tell which of my three kids the baby pictures are of. And when I look at pictures of somebody in the family, I often can't remember and can't tell where I took the picture. And as for father's age, I don't think my kids know my exact age. And it looks like that was pretty much the stuff the IJ was looking at. And I used to calculate my father's age with arithmetic. I knew his date of birth, and I just did the arithmetic in my head. I don't understand why this makes a liar of Baldiv Gill, unless there's something a whole lot better that I overlooked. Your Honor did point out several of the primary reasons that Petitioner raised in their opening brief before the Court as the basis for discrediting the IJ's finding. The argument we heard today is wholly new and was not incorporated in that brief. The cases cited by the Petitioner were just provided to me today. Hold on. I don't really care whether the lawyers are nice to each other for this purpose. What I care about is what evidence is there in the record that showed the IJ and should show us that Baldiv Gill was a liar? Well, all of it. All of the information. How about something specific? Okay. And I'll get to that exactly. You can look at everything in the totality, because this is the finder of facts. How about something greater than specific as the totality in all of it? First of all, and primarily going to the heart of the Petitioner's claim, is the fact that there was lack of credible evidence supporting this Petitioner's admission into the Student Federation. The IJ found that the letter submitted on behalf of the Petitioner from the Federation when queried about it in the record, Mr. Gill was unable to identify who drafted the letter. I thought, was this a case where he didn't really know if the boss had signed the letter or the secretary had signed the letter for the boss? Well, he originally testified that the boss had written the letter and signed it. And then when queried on further examination, he said, well, maybe it was signed by the secretary. And then further examination. Why does that make him a liar? I mean, if you get a letter from President Bush, you don't really know, do you, whether he personally signed it or his signature machine signed it or somebody on his staff signed it for him? I bet even when you get a letter from your senator, you don't know that. If the signature is of the senator, you would presumably, you could presume, I think, that Senator Feinstein wrote me a letter with her signature on it. I would presume she signed that. You would? Boy, you believe a lot of things. Well, if it comes from an official source, this is we don't know. Here, all of the documentation. Signed machines, there's secretaries who have learned after 20 years to make a signature like their boss. In law offices, a lot of letters are signed Andrew J. Kleinfeld slash SJL. Correct. When people are careful. And when they're not careful, the secretary just signs the name. This document was not signed with an A.K. or an S.J.A. or an M.A.R., with a slash in initials. Okay. That's your best to show that this guy's a liar. It goes beyond that. Before we leave that, did the Petitioner at first say that he knew the leader personally? Correct. And then it came out that the leader did not know him. That is correct, Your Honor. And that goes to the same point that I was raising. Not just the letter itself, but whether he belonged to this group or not. He first said that he personally knew this individual, the president of the organization, and then retracted that later only upon cross-examination. His state reports that were submitted as part of the documentation, as one of the prior cases indicated, the state reports in this case indicate that the Student Federation petitions in this case are often fraught with fraud and fraudulent documentation. So the question as to whether or not this letter and the Petitioner's testimony, whether he was a member of this Federation, are critical. So his inconsistencies related to that issue were very or are cogent to the heart of his petition, reason why the Court found him incredible. Where's the part where in the excerpts here where one time he says he does know the other time he says he doesn't? My follow-up question would be, and did the I.J. rely on that? The I.J. did rely on that testimony. Did not? Did rely. I'd like to know where all those things are. Where's the inconsistency and where did the I.J. rely on it? Could you give me a moment, Your Honor? The administrative record at 51, 53, and 55 is where the judge's findings were that he failed to establish his well-founded fear of persecution on account of political opinion. And he relied on the certifying the membership. Let me see. The testimony, Your Honor, is found at pages, I believe it's 70. Okay. Where did the I.J. say he was relying on it? Can you give me three pages here? On page 51, when page 50 and 51, when the bottom of the page, after the case was continued and across examination, he talked about the document, Exhibit No. 6, that showed his membership to the student affiliation. And he first identified the document to be signed by Harbinger Gill, the President. However, he later recanted and testified that it was signed by Mr. Gill's secretary, who wrote the letter. Where did the I.J. rely on the fact that he said at one point, I know Harbinger, and he said at another point, I don't know? I think the inconsistency in the testimony, Your Honor, in the opinion, there's no citation to the record in the I.J.'s opinion with respect to that. But the record, the testimony before the court was. I don't find anything in the I.J.'s opinion that says he based his opinion on the fact of conflicting statements on his personal knowledge of Harbinger. You haven't told me where that is yet. On page 54, line 67, it's not clear from the record as to whether the respondent has ever known Mr. Gill or the secretary of Mr. Gill. Thank you, Judge. Okay. And it's not clear from the record. And what page is in the record, to get back to Judge Kleinfeld's question? Sorry, Judge Kleinfeld. Where this discrepancy appears. On page 137, 138, he discusses the discrepancy of that question. Did you speak with Mr. Gill on the phone? No, my daddy. I'm sorry, my father made this. Your father spoke to Mr. Gill? Yes. Do you personally know Mr. Gill? Yes. If you were to call him now and ask him about you, would he recognize your name? Since it's a long time I'm here, I'm not sure about this. How long were you a member of the AISSF? A member in 95. And what is the signature at the bottom of the letter? Do you know who signed it? It's his secretary, but I don't know personally. Where is the inconsistency? What's the matter with that? I beg your pardon? What's the matter with that? Now, if you called my senators or my congressmen and asked them if they knew me, they'd say yes, but there was a time when I was younger when, yeah, I knew them, I'd shaken their hand, but I wasn't sure if they'd recognize my name if you called them. Your Honor, just to the proof of his membership with this group, this is one thread in the bundle of testimony that was heard before the IJ that related to his affiliation with the student group. In fact, if you look at the testimony with respect to each of the arrest incidences, not one of those instances did Mr. Gill testify was based on his affiliation with the Federation. In fact, the only reason given by the petitioner was that the police were looking for this Mr. Gurmit Singh, who was another member of the Federation from his village. He was told by the police that Mr. Gurmit Singh was sought. We're over time. Yes, Your Honor. I should probably bring things to a close. I just, if I may, Your Honor, reference a recent case that supports this in Roth Nakuman v. Gonzales in February of this year. What circuit? Ninth Circuit. It's 476. If it changes anything, give the clerk one of those. We've given the notice. Thank you. I think you had a moment left for rebuttal. Yes. I just wanted to make one quick note of the last, the perceived discrepancy that you're referring to with the letter from the Federation. Just note that his testimony regarding who signed it is actually not inconsistent. He was asked, you know, who signed it, and he said, well, it was Mr. Gill. And then he was asked a couple other questions. And he said, well, he told his secretary to write the letter. So he said that he was just clarifying his testimony. The letter came through his father. His father requested it. He obtained it. And, again, at page 102 of the record, we know he doesn't read, speak, or understand English. This is significant. He didn't know the contents of the letter. So he simply was telling him that he got the letter from his father, that the letter came from Mr. Gill, that Mr. Gill signed it, but that he later clarified to say that he had his secretary sign it for him. And I would just submit that every basis is not supported by substantial evidence, and it should be overturned, Your Honor. Thank you. Thank you, counsel. And Baldev Singh Gill is admitted.
judges: Kleinfeld, Rawlinson, Restani